IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MICHELLE SORBER, TONY HERNANDEZ, DANIEL CHILDERS, DON HART, HAROLD DICKERSON, WILLIAM MELTON, MARGRET MELTON, ZINMON WHITTER, MOSES SIFUENTEZ, ARMANDO GONZALEZ, JERRY HEAD, HOWARD PERRY, AND MARTHA MOORE, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JULIUS MOORE, *Plaintiffs,* | § § § § § § § § § § § § § § | |
| *v.* | § § § | C.A. NO. 1:18-CV-1088-LY |
| SECURITY WALLS, LLC *Defendant.* | § § § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

COME NOW PLAINTIFFS, Michelle Sorber, Tony Hernandez, Daniel Childers, Don Hart, Harold Dickerson, William Melton, Margret Melton, Zinmon Whitter, Moses Sifuentez, Armando Gonzalez, Jerry Head, Howard Perry, and Martha Moore, as personal representative of the estate of Julius Moore, complaining of the conduct of Defendant Security Walls, LLC, and for cause of action respectfully shows as follows:

### NATURE OF THE ACTION

1. This lawsuit arises out of the Defendant's failure to continue Plaintiffs' employment for reasons that violate their rights under Title I of the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101–12117; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-5; and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–630. Plaintiffs seek back pay, front pay, costs of court, pre- and post-judgment interest, compensatory damages,

punitive damages, liquidated damages, and an award of attorney fees.  A class action charge of discrimination was filed on Plaintiffs' behalf with the Equal Employment Opportunity Commission (EEOC).  The EEOC issued a determination that Defendant violated Plaintiffs' rights under the Americans with Disabilities Act, a copy of which is attached hereto as Exhibit A.  All Plaintiffs exhausted their administrative remedies by being covered by the class action charge and/or filing an individual charge with the EEOC.

JURISDICTION AND VENUE

2.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3.      The events out of which this suit arises occurred in Travis County, Texas, and venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

PARTIES

4.      Plaintiff Michelle Sorber was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit. Plaintiff Sorber is a woman who was over the age of 40 at the time of the events complained of in this suit.  Plaintiff Sorber is a "person" as that term is defined in 42 U.S.C. § 12111(7); 42 U.S.C. § 2000e(a); and 29 U.S.C. § 630(a).  Plaintiff Sorber is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing her security guard job duties for years at the time of the events complained of in this suit.  Plaintiff Sorber had a "disability" as that term is defined in 42 U.S.C. § 12102(1) at the time of the events complained of in this suit: she had a physical impairment as a result of degenerative disc disease and a spinal fusion surgery that substantially limited her range of motion and ability to bend.  Plaintiff Sorber

was also regarded by Defendant as having a physical impairment that substantially limits one or more major life activities, based on her request for reasonable accommodation from Defendant.

5.     Plaintiff Tony Hernandez was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit. Plaintiff Hernandez is a "person" as that term is defined in 42 U.S.C. § 12111(7).  Plaintiff Hernandez is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the time of the events complained of in this suit.

6.     Plaintiff Daniel Childers was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit. Plaintiff Childers was over the age of 40 at the time of the events complained of in this suit. Plaintiff Childers is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 29 U.S.C. § 630(a).   Plaintiff Childers is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the time of the events complained of in this suit.  Plaintiff Childers had a "disability" as that term is defined in 42 U.S.C. § 12102(1) at the time of the events complained of in this suit: Plaintiff Childers had a service-connected injury that left him with scar tissue on his feet, which causes pain and substantially limits his mobility and ability to balance, and for which the Veterans Affairs Administration has awarded him a 30% disability benefit.  Plaintiff Childers was also regarded by Defendant as having a physical impairment that substantially limits one or more major life activities, based on his request for reasonable accommodation from Defendant.

7.      Plaintiff Don Hart was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit.  Plaintiff Hart was over the age of 40 at the time of the events complained of in this suit.  Plaintiff Hart is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 29 U.S.C. § 630(a).  Plaintiff Hart is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the time of the events complained of in this suit.  Plaintiff Hart had a "disability" as that term is defined in 42 U.S.C. § 12102(1) at the time of the events complained of in this suit: Plaintiff Hart had nonobstructive coronary artery disease, hyperlipidemia, and hypertension, which substantially limited the function of his circulatory and cardiovascular systems; diabetes, which substantially limited his endocrine function; and a service-connected injury for which the Veterans Affairs Administration has awarded him a 60% disability benefit.  Plaintiff Hart was also regarded by Defendant as having a physical impairment that substantially limits one or more major life activities, based on his request for reasonable accommodation from Defendant and the results of the medical examinations that Defendant forced Plaintiff Hart to undergo.

8.      Plaintiff Harold Dickerson was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit. Plaintiff Dickerson was over the age of 40 at the time of the events complained of in this suit. Plaintiff Dickerson is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 29 U.S.C. § 630(a).  Plaintiff Dickerson is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the

time of the events complained of in this suit.  Plaintiff Dickerson had a "disability" as that term is defined in 42 U.S.C. § 12102(1) at the time of the events complained of in this suit: Plaintiff Dickerson had hypertension, which would have substantially limited the function of his circulatory system in the absence of medication to control it.

9.     Plaintiff William Melton was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit. Plaintiff William Melton was over the age of 40 at the time of the events complained of in this suit.  Plaintiff William Melton is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 29 U.S.C. § 630(a).  Plaintiff William Melton is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the time of the events complained of in this suit.

10.     Plaintiff Margret Melton was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit. Plaintiff Margret Melton is a woman.  Plaintiff Margret Melton is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 42 U.S.C. § 2000e(a).  Plaintiff Margret Melton is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing her security guard job duties for years at the time of the events complained of in this suit.

11.     Plaintiff Zinmon Whitter was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit.

Plaintiff Whitter was over the age of 40 at the time of the events complained of in this suit. Plaintiff Whitter is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 29 U.S.C. § 630(a). Plaintiff Whitter is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the time of the events complained of in this suit. Plaintiff Whitter had a "disability" as that term is defined in 42 U.S.C. § 12102(1) at the time of the events complained of in this suit: Plaintiff Whitter had a vision impairment that substantially limited his distance vision, and Plaintiff Whitter also suffered from high blood pressure and an irregular heartbeat, both of which would have substantially limited the function of his circulatory and cardiovascular systems in the absence of medication to control them. Plaintiff Whitter was also regarded by Defendant as having a physical impairment that substantially limits one or more major life activities, based on the results of the medical examinations that Defendant forced Plaintiff Whitter to undergo.

12.     Plaintiff Moses Sifuentez was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit. Plaintiff Sifuentez was over the age of 40 at the time of the events complained of in this suit. Plaintiff Sifuentez is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 29 U.S.C. § 630(a). Plaintiff Sifuentez is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the time of the events complained of in this suit. Plaintiff Sifuentez had a "disability" as that term is defined in 42 U.S.C. § 12102(1) at the time of the events complained of in this suit: Plaintiff Sifuentez had a hearing impairment that substantially limited his hearing, but that was ameliorated by wearing hearing aids in both ears, and he had diabetes that substantially limited

his endocrine function but was controlled by medication.

13.     Plaintiff Armando Gonzalez was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit. Plaintiff Gonzalez was over the age of 40 at the time of the events complained of in this suit. Plaintiff Gonzalez is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 29 U.S.C. § 630(a).  Plaintiff Gonzalez is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the time of the events complained of in this suit.  Plaintiff Gonzalez had a "disability" as that term is defined in 42 U.S.C. § 12102(1) at the time of the events complained of in this suit: Plaintiff Gonzalez had heart disease, which substantially limited his cardiovascular function, but was controlled by medication; diabetes, which substantially limited his endocrine function, but was controlled by medication; and degenerative disc disease that would substantially limit his activities of daily living if he did not take pain medication.

14.     Plaintiff Jerry Head was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit.  Plaintiff Head was over the age of 40 at the time of the events complained of in this suit.  Plaintiff Head is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 29 U.S.C. § 630(a).  Plaintiff Head is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the time of the events complained of in this suit.  Plaintiff Head had a "disability" as that term is defined in 42 U.S.C. § 12102(1) at the time of the events complained of in this suit: Plaintiff Head had a hearing

impairment that substantially limited his hearing in the absence of mitigating measures.  Plaintiff Head was also regarded by Defendant as having a physical impairment that substantially limits one or more major life activities, based on the results of the medical examinations that Defendant forced Plaintiff Head to undergo.

15.     Plaintiff Howard Perry was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit.  Plaintiff Perry was over the age of 40 at the time of the events complained of in this suit.  Plaintiff Perry is a "person" as that term is defined in 42 U.S.C. § 12111(7) and 29 U.S.C. § 630(a).  Plaintiff Perry is a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the time of the events complained of in this suit.  Plaintiff Perry had a "disability" as that term is defined in 42 U.S.C. § 12102(1) at the time of the events complained of in this suit: Plaintiff Perry had a history of kidney insufficiency that substantially limited his daily life activities and the operation of his endocrine system before he underwent dialysis, and Plaintiff Perry also suffered from chronic heart failure and high blood sugar, which would substantially limit his cardiovascular and endocrine function, but were controlled with medication..  Plaintiff Perry was also regarded by Defendant as having a physical impairment that substantially limits one or more major life activities, based on the results of the medical examinations that Defendant forced Plaintiff Perry to undergo.

16.     Plaintiff Martha Moore is the personal representative of the estate of Julius Moore.  Mr. Moore died on May 22, 2018.  Martha Moore is Julius Moore's primary heir.  Julius Moore's estate has not been administered; no administration is pending; and no administration is

necessary.  Julius Moore was an incumbent security guard employee at the Internal Revenue Service facility in Austin, Travis County, Texas, who sought continued employment with Security Walls, LLC at the time of the events complained of in this suit.  Mr. Moore was over the age of 40 at the time of the events complained of in this suit.  Mr. Moore was a "person" as that term is defined in 42 U.S.C. § 12111(7) and 29 U.S.C. § 630(a) at the time of the events complained of in this suit.  Mr. Moore was a "qualified individual" as that term is defined in 42 U.S.C. § 12111(8), who had been effectively performing his security guard job duties for years at the time of the events complained of in this suit.  Mr. Moore had a "disability" as that term is defined in 42 U.S.C. § 12102(1) at the time of the events complained of in this suit: Mr. Moore had a visual impairment that substantially limited his sight, and he had congestive heart failure and hypertension, which substantially limited the function of his circulatory and cardiovascular systems, but were managed by medication.  He had also been diagnosed with multiple myeloma in 2012, which substantially limited his immune system at that time.  Mr. Moore was also regarded by Defendant as having a physical impairment that substantially limits one or more major life activities, based on the results of the medical examinations that Defendant forced Mr. Moore to undergo.

17.    Defendant, Security Walls, LLC, is a Tennessee limited liability company licensed to conduct business in Texas, which provides security and private investigation services. One of its places of business was the IRS facility in Austin, Texas.   Defendant employed the security guards at the Internal Revenue Service facility in Austin, Texas under contract, from March 2014 to April 2019.  On or about March 1, 2014, Defendant succeeded another contractor, S&K Aerospace, LLC.  Defendant is a "covered entity" and an "employer" as defined in 29 U.S.C. §§ 12111(2), 12111(5)(A); 42 U.S.C § 2000e(b); and 29 U.S.C. § 630(b).

<u>FACTS</u>

18.     Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore were formerly employed by S&K Aerospace or Murray Guard, Inc.  S&K is a federal contractor ("the Predecessor Contractor") that provided security services to the Internal Revenue Service (IRS) at the IRS facility in Austin, Texas under a contract between the IRS and S&K prior to March 2014.  Murray Guard was a subcontractor to S&K on the Austin IRS contract.

19.     On or about December 12, 2013, Defendant Security Walls, LLC entered into a contract with the IRS to provide security services at the IRS job site in Austin, Texas.

20.     On or about March 1, 2014, Defendant Security Walls, LLC, replaced the Predecessor Contractor as the service contractor for providing security guards for the IRS facility in Austin, Texas.

21.     While employed at the facility by S&K Aerospace, LLC or Murray Guard, Inc., Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore had performed their work satisfactorily.  Their Project Manager under the Predecessor Contractor, whom Defendant later hired as its Project Manager, stated in January 2014 that they "meet the standards and are qualified" for their security guard positions at the Austin IRS.

22.     Under Executive Order 13495,[1] Defendant was required to make bona fide express offers of employment to each person employed by the Predecessor Contractor, including Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore.  "Such offers are required to be for employment in

---

[1] This Executive Order was recently rescinded by President Trump, but was in effect in 2014.

positions for which the service employees are qualified." *Id.* Defendant was required to "base its decision regarding an employee's qualifications on written credible information provided by a knowledgeable source such as the predecessor contractor, the local supervisor, the employee, or the contracting agency" and to "decide any question concerning an employee's qualifications based on the individual's education and employment history, with particular emphasis on the employee's experience on the predecessor contract." *Id.*

23.     Defendant did not offer employment to any of the Plaintiffs. Defendant has taken the position that the Plaintiffs were not "qualified" to be security guards—despite the fact that all the Plaintiffs were competently performing those jobs at the time of the transition—but Defendant did not base its decisions regarding Plaintiffs' qualifications on information provided by the predecessor contractor, the Plaintiffs, the Plaintiffs' supervisors, or the IRS. And in deciding the questions it claimed to have about Plaintiffs' qualifications, Defendant did not base its decisions on education and employment history. Instead, Defendant's decisions were based solely on pre-employment-offer medical and physical agility testing.

24.     Defendant used a third-party medical facility to develop and administer medical examinations and physical agility tests to the incumbent employees prior to offering them employment. The third-party medical facility made a recommendation to Defendant on tests to administer, but Defendant rejected that recommendation as too expensive. Instead, Defendant and the third-party medical facility decided to administer the Border Patrol Agent Physical Fitness Test 1 to the incumbent security guards on a pass-fail basis.

25.     U.S. Customs and Border Patrol offers a six-week standardized training program to prepare applicants to take the Border Patrol Agent Physical Fitness Test 1, but Defendant only gave the incumbent employees at the Austin IRS facility a few days' notice that they would be

taking the test.  Defendant relied solely on the third-party medical facility's pass–fail results to make its determinations as to the incumbent employees' suitability for employment.  This determination was used as the sole criterion by Defendant in deciding which incumbent employees to retain.  Defendant did not inquire about the job performance of employees whom the medical facility stated failed the medical examination or agility test.

26.     The Security Walls–IRS contract provided that if a prospective employee failed to meet a medical standard or failed a specific test, then an examining physician could nonetheless certify that the prospective employee could still perform the job duties of a security guard at the Austin IRS.  Defendant did not inform the third-party medical facility about that provision and did not give the third-party medical facility the option to make those certifications.  Accordingly, the third-party medical facility did not even use physicians in the testing process; instead, based on Defendant's instructions, the third party had medical assistants administer the tests on a strictly pass/fail basis.

27.     The pre-employment-offer medical examinations and physical fitness and agility tests were not job-related and were not consistent with business necessity.  The medical examinations and physical fitness and agility tests were not designed to be—and were not—tailored to the employees' jobs, and did not measure successful performance of the essential functions of the positions sought by Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore.

28.     Neither Defendant nor the third-party testing facility made any effort to validate the Border Patrol test for pass/fail use for security guards.

29.     Defendant's unvalidated tests produced substantial adverse impact on female incumbent employees and incumbent employees age 40: every single female incumbent

employee who took the tests failed them, and incumbent IRS security guards age 40 and over also passed the tests at a significantly lower rate than incumbent IRS security guards under age 40.

30.     Defendant Security Walls, LLC denied all requests for reasonable disability-based accommodations during the testing process, without ever entering into the interactive process with any Plaintiff who requested accommodations to determine whether reasonable accommodations could be made.  Plaintiffs Sorber, Childers, and Hart all requested reasonable accommodations in the testing process, and Defendant denied each of the requests without engaging in any interactive process.   Other Plaintiffs were dissuaded from requesting accommodations because of Defendant's policy of refusing all accommodation requests.

31.     Plaintiffs Hernandez, Childers, Hart, Dickerson, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore failed Defendant's pre-employment-offer tests.  Plaintiff Sorber did not take the tests because of Defendant's refusal to offer—or even discuss—accommodations for her disabilities.  Plaintiffs William Melton and Margret Melton did not take the tests because they were in the hospital with their young son, who was in the Intensive Care Unit.

32.     Defendant has testified under oath in this litigation, through its corporate representative, that their failure to pass Defendant's pre-employment-offer tests was the only reason that Defendant did not hire Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore to continue working as security guards at the Austin IRS facility.

33.     The testing required of Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore utilized standards, criteria, or methods of administration that have the effect of discrimination on the

basis of disability, and used qualification standards or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, without being job-related for the position in question and consistent with business necessity. These standards, criteria, and methods include the pass–fail nature of the tests; the refusal to discuss any reasonable accommodations for any test-takers; the failure to comply with the requirement in the Security Walls–IRS contract that in the event an applicant failed a portion of the tests, then a physician must opine on whether that failure would interfere with the applicant's job performance as a security guard; and the failure to have physicians conduct all the tests.

34.     The testing required of Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore had a disproportionate effect of screening out substantially more female applicants than male applicants.

35.     The testing required of Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore had a disproportionate effect of screening out substantially more applicants forty years of age and older than younger applicants.

36.     A timely charge of discrimination was filed on behalf of Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore with the EEOC: EEOC Charge No. 451-2014-01277 (Amended), alleging violations of the ADA, Title VII, and the ADEA.

37.     Plaintiff Michelle Sorber also filed an individual charge of discrimination with the EEOC: EEOC Charge No. 451-2014-01224, alleging discrimination on the basis of disability, age, and sex.  Plaintiff Tony Hernandez also filed an individual charge of discrimination with the

EEOC: EEOC Charge No. 451-2014-01076, alleging discrimination on the basis of disability and age.  Plaintiff Don Hart also filed an individual charge of discrimination with the EEOC: EEOC Charge No. 846-2014-09120, alleging discrimination on the basis of disability and age.

38.     On July 6, 2018, the EEOC determined that there was reason to believe that Defendant discriminated against the incumbent employees in violation of the ADA in that the incumbent employees were subjected to unlawful pre-offer medical inquiries and agility examinations, denied reasonable accommodations in the testing process, and denied hire due to disability or perceived disability.

39.     The EEOC made no findings regarding whether Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore were discriminated against on the basis of sex or age.

40.     The EEOC issued a right-to-sue letter in Charge No. 451-2014-01277 (Amended) on September 27, 2018.  The EEOC issued individual right-to-sue letters to Plaintiff Michelle Sorber in Charge No. 451-2014-01224, to Plaintiff Tony Hernandez in Charge No. 451-2014-01076, and to Plaintiff Don Hart in Charge No. 846-2014-09120 on September 27, 2018.

CAUSE OF ACTION:  ADA, 42 U.S.C. §§ 12101–12117

41.     Defendant violated Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore's ADA rights, in violation of 42 U.S.C. §§ 12101–12117.  Defendant subjected Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore to unlawful pre-offer medical inquiries and agility examinations.  Defendant refused to make, or even discuss, reasonable accommodations requested by Plaintiffs Sorber, Childers, and Hart.  Defendant discriminated against the incumbent employees with disabilities—

Plaintiffs Sorber, Childers, Hart, Dickerson, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore—by utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability; by using qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, without being job-related for the position in question and consistent with business necessity; and by denying them employment due to disability or perceived disability.  The illegal tests were the sole cause of Defendant's failure to hire Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore.

CAUSE OF ACTION:  TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e–2000e-5

42.    Defendant's requirements that the incumbent employees undergo pre-employment-offer medical and physical agility testing resulted in the unlawful and discriminatory exclusion of a disproportionate number of female employees from the workforce, including Plaintiffs Sorber and Margret Melton, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-(k)(1)(A)(i).  The tests were not job related for the position in question and consistent with business necessity, and they failed to measure the minimum qualifications necessary for successful performance in the position of security guard.  The tests caused a disparate impact on female incumbent employees on the basis of sex.  The illegal tests were the sole cause of Defendant's failure to hire Plaintiffs Sorber and Margret Melton.

CAUSE OF ACTION:  AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967, 29 U.S.C. §§ 621–630

43.    Defendant's requirements that the incumbent employees undergo pre-employment-offer medical and physical agility testing resulted in the discriminatory exclusion of a disproportionate number of employees forty (40) years of age and older, including Plaintiffs

Sorber, Childers, Hart, Dickerson, William Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore, in violation of the Age Discrimination in Employment Act of 1967.  The tests produced disparate impact on the 40-year-old-and-older incumbent employees.

44.     This differentiation was not based on a reasonable factor other than age, because the tests were not reasonably designed to further or achieve a legitimate business purpose and were not administered in a way that reasonably achieves any such purpose in light of the particular facts and circumstances that were known, or should have been known, to the Defendant.  The illegal tests were the sole cause of Defendant's failure to hire Plaintiffs Sorber, Childers, Hart, Dickerson, William Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry, and Mr. Moore.

<u>RELIEF SOUGHT</u>

45.     Defendant has now lost the Austin IRS contract and is thus unable to reinstate Plaintiffs Sorber, Hernandez, Childers, Hart, Dickerson, Melton, Melton, Whitter, Sifuentez, Gonzalez, Head, and Perry to Austin IRS security guard positions.  Accordingly, Defendant should be ordered to pay them front pay as a result of Defendant's illegal actions.

46.     As a proximate result of Defendant's improper and illegal actions, all Plaintiffs have suffered damages.  In this connection, Plaintiffs have suffered and will continue to suffer loss of wages and/or earning capacity as a result of Defendant's discrimination.  Plaintiffs have also suffered and will continue to suffer emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and/or other nonpecuniary losses.

47.     Defendant's violation of Plaintiffs' rights was conducted willfully, maliciously, with conscious or reckless disregard of Plaintiffs' rights, and with a perceived risk that Defendant's actions would violate federal law.  Plaintiffs are therefore entitled to liquidated

damages and punitive damages in an amount sufficient to deter Defendant's conduct.

48.     Plaintiffs are also entitled to the maximum amount of pre- and post-judgment interest, as permitted by law.

49.     As a result of Defendant's illegal actions, Plaintiffs have been forced to retain legal counsel to remedy Defendant's wrongful and illegal acts.  Plaintiffs are entitled to recover all reasonable and necessary attorneys' fees and expenses incurred in preparing and maintaining this action.

<u>JURY TRIAL</u>

50.     Plaintiffs request and demand a trial by jury.

<u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray that Defendant be cited to appear and answer herein, and that upon final trial hereof, Plaintiff be accorded damages as sought herein, including compensatory, liquidated, and punitive damages, reasonable and necessary attorneys' fees, court costs, pre- and post-judgment interest, appropriate declaratory and/or injunctive relief, including back and/or front pay, and all such other relief, at law or in equity, to which they may show themselves justly entitled.

*Respectfully Submitted,*

*/s/ Matt Bachop*
Matt Bachop
TBN: 24055127
mbachop@ddollaw.com
Elaine F. Edwards
TBN:  24049829
eedwards@ddollaw.com
DEATS DURST & OWEN, PLLC.
707 West 34th Street, Suite 3

Austin, Texas 78705
(512) 474-6200
(512) 474-7896 – Fax

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document has been served on counsel for Defendant, Tonia L. Lucio, tlucio@rrsfirm.com, Benjamin H. Hathaway, bhathaway@rrsfirm.com, RICHARDS RODRIGUEZ & SKEITH, 816 Congress Avenue, Suite 1200, Austin, Texas 78701, Facsimile: 512-476-1513, by the Court's CM/ECF system on this 18th day of March, 2020.

　　　　　　　　　　　　　　　 /s/ Matt Bachop
　　　　　　　　　　　　　　　Matt Bachop